STATE OF NEBRASKA, APPELLEE, V. ROBERT T. BROCKMAN, APPELLANT.

439 N.W.2d 84

Filed April 27, 1989.    No. 88-664.

Thomas M. Kenney, Douglas County Public Defender, and Timothy P. Burns for appellant.

Robert T. Brockman, pro se.

Robert M. Spire, Attorney General, and Kenneth W. Payne for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Robert T. Brockman appeals his jury conviction and resulting sentence for possession of cocaine with intent to deliver. We affirm Brockman's conviction and sentence.

On appeal, Brockman argues that evidence was seized from his person pursuant to an invalidly executed search warrant. Before trial, Brockman moved to suppress the evidence found on his person. After an evidentiary hearing, the motion to suppress was overruled.

A jury found Brockman guilty of possession of cocaine with intent to deliver, in violation of Neb. Rev. Stat. § 28-416(1)(a) (Cum. Supp. 1988), a Class II felony. A Class II felony carries a penalty of 1 to 50 years' imprisonment. Neb. Rev. Stat. § 28-105 (Reissue 1985). Brockman was sentenced to an indeterminate term of 3 to 5 years' imprisonment.

On February 12, 1988, Omaha police officers executed a daytime search warrant at an Omaha, Nebraska, residence. At the residence, the defendant, who was described in the warrant, was arrested, handcuffed, and subjected to a pat-down search. In Brockman's right pants pocket, a police officer found a substantial sum of money.

After being searched, Brockman collapsed from what was later discovered to be a drug overdose. While waiting for a rescue squad, officers searched Brockman more thoroughly and discovered another substantial sum of money in his socks. Officers also learned the defendant's full name and that a misdemeanor warrant for his arrest was outstanding. When the rescue squad arrived, Brockman was transported to Saint Joseph Hospital. Omaha police officers accompanied him in the ambulance.

At the hospital, Brockman was examined in the emergency room by a physician, Dr. Grace Auten. In the course of the examination, Dr. Auten discovered a clear bag containing a white substance between Brockman's buttocks. A police officer who was present during the examination removed the bag for content analysis. A police hold was placed upon the defendant at the hospital. Later, a chemist analyzed the bag's contents and determined it to be "crack" cocaine.

Immediately before trial, the defendant moved to suppress evidence seized as a result of the execution of the search warrant. In his oral motion, Brockman claimed that the search was not pursuant to a valid warrant, that the search exceeded the authority of the warrant, and that there was no probable cause for the search.

The trial court found that the police officers had sufficient probable cause to search the defendant at the hospital and that there was no necessity for a search warrant at that time. The motion to suppress was denied.

In his appeal, Brockman assigns one error: that the trial court erred in not sustaining his motion to suppress the evidence obtained as a result of the search warrant. His argument is based upon this court's holding in *State v. Holman*, 229 Neb. 57, 424 N.W.2d 627 (1988). In *Holman*, we held that "for the purposes of determining whether a search complied with the

terms of a daytime search warrant, 'daytime' extends from dawn to darkness." *Id*. at 59, 424 N.W.2d at 628.

Brockman did not raise this argument at his trial court suppression hearing. Accordingly, the district court had no opportunity to rule on the issue. An issue not presented to or passed upon by the trial court is ordinarily not appropriate for consideration on appeal. See, *State v. Blair*, 230 Neb. 775, 433 N.W.2d 518 (1988); *State v. Narcisse, ante* p. 805, 438 N.W.2d 743 (1989). However, because other issues must be discussed, we will assume, without deciding, that the daytime warrant was illegally executed after dark.

Three separate items were seized from Brockman and entered into evidence at trial: (1) the money found in Brockman's right pants pocket, (2) the money found in Brockman's socks, and (3) the cocaine found by the doctor at the hospital. No objection was made to introduction at trial of the cocaine or of the money found in Brockman's right pants pocket. The money found in Brockman's socks was objected to; however, we find that any error in its admission was harmless. A large sum of money found on Brockman's person was admitted without objection. The admission of the money from Brockman's socks was, at most, cumulative. See *State v. Thompson, ante* p. 771, 438 N.W.2d 131 (1989).

In a criminal trial, after a pretrial hearing and order overruling a defendant's motion to suppress evidence, the defendant must object at trial to admission of the evidence which was the subject of the motion to suppress in order to preserve a question concerning admissibility of that evidence for review on appeal. *State v. Sock*, 227 Neb. 646, 419 N.W.2d 525 (1988); *State v. Roggenkamp*, 224 Neb. 914, 402 N.W.2d 682 (1987). By not objecting at trial, Brockman failed to preserve for appeal the issue of the admissibility of the money found in his pants pocket and the cocaine. Brockman requests that we consider the introduction of the cocaine as plain error on the record as the fruit of an illegal search. Even if we assume that the search pursuant to the warrant was illegal, there is no basis upon which to reverse Brockman's conviction.

Brockman's collapse due to a drug overdose created an emergency situation requiring medical attention. At that time,

Brockman was in police custody. Police officers have a duty to seek medical care for persons who are in need of such care while in their custody. See *Lutheran Medical Center v. City of Omaha*, 229 Neb. 802, 429 N.W.2d 347 (1988). Therefore, the officers would have been derelict in their duty had they not called the rescue squad and continued to ensure that Brockman received medical treatment.

By the time Brockman reached the hospital, police officers had run a records check on Brockman and determined that an outstanding warrant existed for his arrest. Hospital personnel were advised of the warrant, and a police hold was placed on Brockman so that he could not leave the hospital. Pursuant to this warrant, officers were properly maintaining custody of the defendant, regardless of the validity of the original search. Further, Brockman's need for emergency medical care is an intervening circumstance sufficient to attenuate the connection between the original execution of the search warrant and the seizure of the cocaine. See *State v. Thompson, supra.*

In *Thompson*, we held that a police officer's recognition of the defendant as a robbery suspect operated as an intervening circumstance to attenuate the earlier illegal stop of the vehicle in which Thompson was a passenger. Because the officer's actions after recognizing the defendant were based on a source completely independent of and unrelated to the illegal stop, the connection between the stop and the defendant's arrest was so attenuated as to dissipate the taint of the illegal stop.

Here, when the cocaine was found, Brockman was being examined by a physician after his collapse from a drug overdose. The police officer's presence at that time was mandated by his duty to provide medical care to a person in his custody. The police officer had a right to be where he was when the doctor found the cocaine. Finding of this contraband upon Brockman's person was inadvertent and completely independent of and unrelated to the possibly illegal execution of a search warrant. Any taint of a possibly illegally executed search pursuant to a warrant was attenuated by the intervening circumstance of Brockman's collapse and need for medical attention.

At the time the doctor found the cocaine upon Brockman's

person, the defendant was committing one of two crimes in the police officer's presence: (1) possession of cocaine, or (2) possession of a controlled substance with intent to deliver. Both of those crimes are felonies. § 28-416. The officer had probable cause to believe that at least one of those crimes was being committed and had probable cause to arrest Brockman. People do not normally carry a bag of white powder concealed between their buttocks unless it is contraband. The U.S. Constitution does not require that a policeman simply shrug his shoulders and allow a crime to occur or to continue. See *State v. Micek*, 193 Neb. 379, 227 N.W.2d 409 (1975).

At the suppression hearing, the trial court found that a search warrant was unnecessary at the time the cocaine was found. The court stated: "The officer observed the suspected contraband at a time when he was at a place where he was supposed to be, and there was probable cause to search the defendant at that point." This ruling by the trial court was correct. The cocaine seizure falls within the "plain view doctrine." Summarized, the plain view doctrine permits an officer to immediately seize, without a warrant, contraband inadvertently coming into the officer's view if the officer has a right to be where he can see the contraband. See, *State v. Trahan*, 229 Neb. 683, 428 N.W.2d 619 (1988); *State v. West*, 223 Neb. 241, 388 N.W.2d 823 (1986). There is no plain error on the record.

In a pro se supplemental brief, the defendant complains about his initial arrest, detention, resultant searches, and the trial court's refusal to suppress them. We interpret these complaints as assignments of error that the trial court failed to suppress the evidence seized in the search.

Defendant's combined complaints in his pro se supplemental brief concerning the admissibility of evidence obtained as a result of searches upon him have been considered elsewhere in this opinion and merit no further consideration. Brockman's pro se complaint that his lawyer was ineffective because he filed an oral rather than a written motion to suppress evidence is likewise meritless. The trial court denied the suppression motion after an evidentiary hearing in which the validity of the search warrant heretofore referred to was challenged. To

sustain a claim of ineffective assistance of counsel, the defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defense. *State v. Ellefson, ante* p. 120, 435 N.W.2d 653 (1989); *State v. Kitt, ante* p. 52, 434 N.W.2d 543 (1989). Brockman has not met either of these requirements.

Lastly, in his pro se brief, Brockman assigns as error that he is black and was illegally tried before an all-white jury. In addressing this complaint, we are bound by the following rules:

> Although a criminal defendant has no right to a petit jury composed in whole or in part of persons of her or his own race . . . the equal protection clause of U.S. Const. amend. XIV bars a prosecutor from challenging potential jurors "solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." . . . In order to make a prima facie case of discrimination in the selection of a jury, a criminal defendant must show that (1) she or he is a member of a cognizable racial group, (2) the prosecutor used peremptory challenges to remove members of the defendant's race from the venire, and (3) the facts and other relevant circumstances give rise to an inference that the prosecutor used those challenges to exclude potential jurors because of their race. Once the defendant has made a prima facie case, the burden shifts to the State to provide a neutral explanation for the challenges related to the particular case to be tried. The explanation need not rise to the level of a challenge for cause, but neither may the prosecutor rebut defendant's prima facie case by stating that potential jurors were struck based on the intuitive judgment that they would be partial to defendant because of their shared race.

(Citations omitted.) *State v. Rowe*, 228 Neb. 663, 667-68, 423 N.W.2d 782, 786 (1988).

> By asking the State to articulate its reason for questioned strikes, a trial court implicitly finds a criminal defendant has met her or his burden of proving a prima facie case of discrimination in the selection of a jury. The trial court's

findings that there was no discrimination in the selection of a jury are not to be reversed on appeal unless clearly erroneous.

(Syllabuses of the court.) *State v. Rowe, supra.*

In this case, Brockman, a black, under the rules enunciated, established a prima facie case of discrimination in the selection of the jury. The prosecutor peremptorily struck the only two black members from the panel of 24 jurors.

When called upon by the court to articulate his reasons for striking the two black jurors, the prosecutor stated that one of the black jurors lives close to where the defendant resided at the time he was booked. With respect to the second black juror, the prosecutor related:

> [W]hen he was called out of the panel and came up and gave his address and where he worked and so forth, I noticed that he had a rather obvious earring hanging out of his left ear. And if we were picking a jury in California, or whatever, that probably wouldn't make much of a difference. But here in Omaha, it at least in my way of thinking indicates that he is somewhat of a nonconformist or a free spirit. And I don't believe on a possession of narcotics case that I would want to have a juror that dresses in that fashion.

The prosecutor also pointed out that there was an alternate juror in the case, that each side had one strike, and that a black person served as an alternate juror. The trial court overruled defense counsel's motion for a mistrial which was based upon alleged discrimination in selection of the jury.

It is inherent in the trial court's order overruling Brockman's motion for a mistrial claiming discrimination in the selection of his jury that the trial court found the prosecutor did not strike the two black jurors because of their race, but rather on neutral grounds. We cannot say that the trial court's ruling was clearly erroneous. Brockman's assignment of error in regard to the selection of the jury that tried him is not supported by the record.

The judgment of the district court is correct. The defendant's conviction and sentence are affirmed.

AFFIRMED.